RECEIVED
SDNY PRO SE OFFICE

UNITED STATES DISTRICT COURT  2021 APR 19  AM 9:46
SOUTHERN DISTRICT OF NEW YORK

---

CALVIN REED

Write the full name of each plaintiff.

-against-

CITY OF NEW YORK, NYC POLICE DEP'T.,

POLICE OFFICERS JOHN DOE #1-#6; POLICE

OFFICER DENNIS, Detective Jane And John

Doe, #1-#2; NEW YORK CITY DEPARTMENT

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

---

20   CV  08352  (LLS)

(Include case number if one has been
assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes   ☐ No

(see attched)

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OF CORRECTION, CYNTHIA BRANN, COMMISSIONER,
AND ANTHONY ANNUCCI, ACTING COMMISSIONER,
NEW YORK STATE DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION (formerly, New York State
Division of Parole), PO., ANDRE LOGAN, SPO
MEDINA, AREA SUPV., NYDIA GARCIA, SPO SHANAVIA DANDRIDE,
NYS PAROLE OFFICERS JANE and JOHN DOE #1-#5,
NEW YORK CITY DEPARTMENT OF CORRECTION
(Riker's Island Corrections Officers), JOHN And
JANE DOE #1-#5 (Special Search Team);  JOHN DOE
#1-#3; CENTRAL BOOKING NURSE JANE DOE, (#1),

                              Defendants.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☑ Violation of my federal constitutional rights

☑ Other:  Due Process (State and Federal),

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

| CALVIN | | REED |
|--------|--------|------|
| First Name | Middle Initial | Last Name |

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (If you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

885-20-00017 (Booking Case#),

Current Place of Detention

The North Infirmary Command ("NIC"), 1500 Hazen St., E.Elmhurst

Institutional Address

| Queens | NY | 11370 |
|--------|--------|------|
| County, City | State | Zip Code |

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☑ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☑ Other:  Post Release Supv., ("PRS")

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| DENNIS, NYPD | | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC POLICE OFFICER
Current Job Title (or other identifying information)
450 Cross Bronx Expressway
Current Work Address

| Bronx | NY | 10457 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| JANE DOE, NYPD | | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC DETECTIVE
Current Job Title (or other identifying information)
450 Cross Bronx Expressway
Current Work Address

| Bronx | NY | 10457 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| JOHN DOE #1 NYPD | | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC  DETECTIVE
Current Job Title (or other identifying information)
450 Cross Bronx Expressway
Current Work Address

| Bronx | NY | 10457 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

| JOHN DOE #1, NYPD | | (Unkown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC POLICE (Warrant) Officer
Current Job Title (or other identifying information)
450 Cross Bronx Expressway
Current Work Address

| Bronx | NY | 10457 |
|---|---|---|
| County, City | State | Zip Code |

## DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

**Defendant 5**

| John | Doe | (Unknown) |
|------|-----|-----------|
| First Name | Last Name | Shield # |

NYC POLICE (Warrant) Officer

Current Job Title (or other identifying information)

450 Cross Bronx Expressway

Current Work Address

| Bronx | NY | 10457 |
|-------|-----|-------|
| County, City | State | Zip Code |

**Defendant 6**

| John | Doe | (Unknown) |
|------|-----|-----------|
| First Name | Last Name | Shield # |

NYC Police Detective

Current Job Title (or other identifying information)

450 Cross Bronx Expressway

Current Work Address

| Bronx | NY | 10457 |
|-------|-----|-------|
| County, City | State | Zip Code |

**Defendant 7**

| Cynthia | Brann | (Unknown) |
|---------|-------|-----------|
| First Name | Last Name | Shield # |

NYC Dep't of Correction, Commissioner

Current Job Title (or other identifying information)

75-20 Astoria BLVD., East Elmhurst, N.Y. 11370

Current Work Address

| | | |
|-|-|-|
| County, City | State | Zip Code |

**Defendant 8**

| John | Doe | (Unknown) |
|------|-----|-----------|
| First Name | Last Name | Shield # |

NYC Dep't of Correction (#1-#3),

Current Job Title (or other identifying information)

Riker's Island (Special Search Team)

Current Work Address

| 1500 East Elmhurst, N.Y | | 11370 |
|-------------------------|-|-------|
| County, City | State | Zip Code |

## DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

**Defendant 9:**

| John | Doe #1-#3 | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC POLICE (Warrant) Officer

Current Job Title (or other identifying information)

450 Cross Bronx Expressway

Current Work Address

| Bronx | NY | 10457 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 10:**

| Andre | Logan | |
|---|---|---|
| First Name | Last Name | Shield # |

NYC., Parole Officer

Current Job Title (or other identifying information)
Bronx III Area Office:

Current Work Address
79 Alexander Ave., Bronx, NY 10454

| County, City | State | Zip Code |
|---|---|---|

**Defendant 11:**

| John | Doe #2 | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC., Parole Officer

Current Job Title (or other identifying information)
Bronx III Area Office:

Current Work Address
79 Alexander Ave., Bronx, NY 10454

| County, City | State | Zip Code |
|---|---|---|

**Defendant 12:**

| John | Doe #3 | (Unknown) |
|---|---|---|
| First Name | Last Name | Shield # |

NYC.,  Parole Officer

Current Job Title (or other identifying information)
Bronx III Area Office:

Current Work Address
79 Alexander Ave., Bronx, NY 10454

| County, City | State | Zip Code |
|---|---|---|

Page 5

## DEFENDANT INFORMATION:


**Defendant 13:**  John               Doe #4             (Unknown)
                   First Name       Last Name       Shield #

                   NYS Parole Officer
                   Current Job Title (or other identifying info.,)
                   Bronx III Area 79 Alexander Ave.,

                   Current Work Address:
                   Bronx             NY             10457
                   County, City      State         Zip Code

**Defendant 14:**  John               Doe #5             (Unknown)
                   First Name       Last Name       Shield #

                   NYS Parole Officer
                   Current Job Title (or other identifying info.,)
                   Bronx III Area 79 Alexander Ave.,
                   Current Work Address:
                   Bronx             NY             10457
                   County, City      State         Zip Code

**Defendant 15:**  NYS Parole Supv., Officer Medina, ("SPO")
                   (shield # Unknown), Current Work Address:
                   Bronx III Area 79 Alexander Ave., Bx, NY 10457
                   County, City      State        Zip Code


**Defendant 16:**  NYC Dep't of Corr., Corrections Nurse Jane Doe,
                   (shield # Unknown), Current Work Address:
                   265 E. 161st Street ("Central Booking"), Bx, NY
                   10451
                   County, City      State        Zip Code


**Defendant 17:**  NYS Parole Supv., Officer NYDIA GARCIA,("SPO")
                   (shield # Unknown), Current Work Address:
                   Bronx III Area 79 Alexander Ave., Bx, NY 10457

## DEFENDANT INFORMATION:

Defendant 18: NYS Parole Supv., Officer Shanavia Dandride,
              ("SPO") (shield # Unknown), Current Work Address:
              Bronx III Area 79 Alexander Ave., Bx, NY 10457

## V.    STATEMENT OF CLAIM                    (see attached)

Place(s) of occurrence: <u>West Fordham Road (BRC) men shelter; 2115 E.180</u>
<u>th Street, and Mohegan Bronx NY 10460</u>

Date(s) of occurrence: <u>9/9/19; 7/17/20; 8/3/20</u>

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

At approximately 10:00 a.m., on 9/9/19, I, Mr.Calvin Reed, was
about to prepare myself for bed while at a BRC men shelter
located on West Fordham Road, the Bronx, NY. Three (3) men
approached me and asked was I "Calvin Reed," without knowledge
of what was going on, nor knowing who they were, I walked
away and started to run out the shelter but without warning or
explanation, Defendants John Doe #1-#3 (warrant officers),
grabbed my arms and flipped me on the floor placing handcuffs
on me. Thereafter, without announcing that they were police
officers, I was confronted by Defendants John Doe #1-#3 as
plain clothes New York City Police Officers upon transporting
me to the 48th precinct. On July 17,2020, while working on my
job, two (2) uniform police officers arrest me, removing me
from my job, thereafter transported me to the 48th precinct
and thereafter, to central booking. But, while at the precinct
officer Dennis, who finger printed me stated, "you're OK, you
do not have no 'warrants'" and she also said that my boss
spoke very high of me. I was released on July 24,2020 ("ROR"),
however, this violated my 4th Amendment Rights where I could not
proceed to go to work and thereafter, loss my job.

Case 1: 20-cv-08352-LLS          Document 17-1  Filed 12/15/20   page 9
                                                                of 17

<u>See attached Cont'd</u>

V. STATEMENT OF CLAIM

    On August 3,2020, I started off for work when three(3) plain
clothes police officers drove up on me in a gray mini-van with
tinted windows and surrounded me. At first, I did not recognized
whether they were cops or not so I ran and they chased and
arrested me. Now, I really lost my job! They also confiscated my
personal property of an I-phone and expensive headphones. While
at the precinct, Jane Doe, (detective), would not allow no one in
my family to come and pick-up my property.

    Thereafter being held long in bull-pins, I was taken to
central booking to be processed when a corrections nurse (jane
Doe), questioned me on whether I coughed within the last 24 hours
inwhich I applied "yes," because I was sleeping under my air
conditioner all night. The nurse erroneously took it to another
level and directed the detectives (Jane and John Doe) to escort
me to "Lincoln" hospital on 149th Street and Third Ave., the
Bronx, N.Y., around 1:30 p.m.

    After being "rejected" by Central Booking nurse, Jane Doe, I
was transported to Brooklyn to be arraigned at an unknown
facility. (see grievance attached as Ex.A).

## V. STATEMENT OF CLAIM CONT'D

On August 12, 2020, Mr. Oberlander, the assigned (arraignment court's lawyer), sent an e-mail to the facility I was held at for me to call him. However, afterwards, I learned he "waived" my grand jury right to testify. During the pre-arraignment, he did not have my criminal record or anything of material to refute the ADA's allegations and accusations of false information concerning me.

While in Supreme Court arraignment, 10/29/20, I raised my hand as respect to the court and tried asking whether if I can speak but, the judge ordered me " ... put your hands down Mr. Reed, and speak to your lawyer."  Not only my right of the Six Amendment was violated, but the fact I could not speak constituted a violation of the First Amendment Right to "free speech" where I had every right to defend myself during that critical stage because Mr. Oberlander remained mute and did not defend me against the ADA's false information before that judge.

Nevertheless, whenever I appear on the court's calendar, the NYC Dep't of Corr., will not produce me. However, I am on the Calendar for court, on April 14, 2021, also, I am waiting for the court to furnish me a copy of my disposition concerning this case which was resolved between October and December 2020 ... in so many words which was basically "dismissed." Also, my Right of the fourteenth Amendment was violated and Due Process were ignored.

## V. STATEMENT OF CLAIM CONT'D:

However, on 8/3/20, I asked detective Jane Doe if my family
members can come to the precinct and talk to her and find out the
situation on whether if the arrest could be resolved and she
denied that request.

The nurse at the hospital was not able to produce a rapid
COVID-19 Test Result at that time; it would take 3-4 days but,
she wrote a note affirming that "the inmate do not ... have no
symptoms and that he can be in General Population ..." So I was
completely denied entrance at Central Booking to be processed
and to see a judge in order to go home, my rights were violated
as I was restrained of my liberty.

Detectives Jane and John Doe transported me back to the
precinct when one of the Sgt., yelled out, " ... we're not baby
sitting, take him to Brooklyn." One hour after, I was then
transported the by detective Jane Doe and another female police
officer to an unknown facility waiting hours to be arraigned
which was at 4:30 a.m.  I was taken upstairs and sat in front
of a video-screen before a Judge, ADA, IT Worker, and the
Court's assigned lawyer who allowed the ADA to present false
information and accusations against me by slandering saying,
"Your Honor, this defendant is 'a registered sex offender from

## STATEMENT OF CLAIM CONT'D

Texas who has four felonies and 25 misdemeanors.'"Those statements are not true ... and they hurt, as my Criminal Record do not reflect such false information. Immediately, the Judge set bail at $50,000.00 BOND/$25,000.00 CASH making it extremely impossible to post it which is a complete burden and violation of the Criminal Procedure Law ("CPL" §530.10), which "gives a court the power, upon application of a defendant charged with or convicted of an offense, to fix bail for the release of such defendant during the pendency of the criminal action or during the pendency of an appeal from a judgment of the conviction ... "

Indeed this "Cruel and Unusual Punishment" of the Fundamental Rights where "In New York, the subject of bail is regulated by statute and the court has only such authority to order the release of a prisoner as granted by statute, where the court has the power to fix bail the constitutional command is that it shall not be excessive "... NY.Const., art. 1,§5 . Besides the police officers' altered and fabricated DIR statements, (see Exhibit C as attached), conveyed to the ADA, both conspired to indict me on a 28-count indictment which I never saw, nor have I received any court papers indicating I committed said crime(s). My 180.80 date was purposely delayed and then tolled by the Executive Order 202.8, which was

## STATEMENT OF CLAIM CONT'D

extended by Gov., Cuomo. Upon being arrested August 3,2020, as a fact, on July 6,2020, the Gov., extended EO 202.8 until August 5,2020 (EO 202.48). And, on August 5,2020, Gov., Cuomo extended EO 202.8 until September 4,2020 (EO 202.55). However, after being rejected by Mr.Oberlander, the 1st assigned lawyer, and the four (4) court dates I was not produced at, how did I get indicted, even beyond 45-days by a Grand Jury when the Govorner explicitly announced, " ... the toll is currently'ineffect until September 4,2020.'"

In People of the N.Y. ex rel.James Martorano: ex rel.Akino George v. Cynthia Brann, Reporter: 2020 N.Y.Misc.Lexis 7667 states, "The People argue that they do not have to make an application to schedule a preliminary hearing until they have received a decision on their application to deny a defendant's requests for an 'Order of Release' which they argued was justified based solely on the unavailability of the Grand Juries ." That is not what the Statute,  the  Executive  Order, or  the  administrative  guidlines require. More important, there is no authority to hold a defendant in custody and seek to schedule a preliminary hearing after the 180.80 deadline has passed absent a Granted good Cause application allowing that to happen."

## STATEMENT OF CLAIM CONT'D

The assigned lawyer should not had handled the case from the start which he knew or should had known that he was not competent to handle, without associating with a lawyer who was competent to handle it.

Under EO 202.8, March 20,2020, the Gov., states, " ... I direct that, effective immediately and until further notice, no papers shall be accepted for filing by a county clerk or a county in any matter of a type not included on the list of essential matters annexed as Ex.A. Chief Judge Janet Di Fiore, Administrative Order, AO/78/20 dated March 22,2020 ... Exhibit A ... Essential Proceedings ... "

However, during this time, August 3, through September 4, 2020, EO 202.28 justifies a decision extending that statute's deadline for good cause based on the fact that no grand jury has yet been empaneled and the People cannot meet that statute's "indictment" requirement, provided they have prevailed at a preliminary hearing. And if they have, I have not been informed of it, nor have I been given a felony complaint after arraignment. By the terms of 180.80. an order of release is required when there is no indictment, no probable cause finding following a timely preliminary hearing, and no consent to waive the 180.80 period dispose of the case via a plea.

## STATEMENT OF CLAIM CONT'D

Finally, upon being arrested August 3,2020, I learned
from viewing a Domestic Incident Report ("DIR"), dated: July 27,
2020, that the second page of the document indicates no
statement; "refused," and is signed as an abreviation of the
"victim."  However, this document - which appears to be up to
date following my arrest - is not admitted by the ADA who
prosecuting this case, instead, they are using false information
during the time I was previously arrested on July 17,2020 and
was released on my own recognizance ("ROR") and was to appear in
court October 2020.

As I mentioned above, I was arrested on my job (withot a
warrant), August 3,2020 and taken to the 48th precinct. And if
the court issued a warrant for my arrest it had to be based on
the false information I was "released" on and told to appear
back in the month of October 2020. "Conversely, where a
defendant has been arrested without a warrant, a court 'must
dismiss [an] accusatory instrument and discharge the defendant.'"

" ... if the accusatory instrument 'is not sufficient on its
face' and the court is satisfied that based upon the available
facts or evidence it would be impossible to file one which is
'sufficient on its face."

Besides the police officer's hearsay statement dated: 7/27/ 20, conveyed to the ADA who indicted me on a 28-count indictment which I've never was furnised, nor have I received any papers indicating I committed said crimes, between the 18-b lawyers, ADA and the court, I am being blind-foled by them and threatened if I proceed to trial they will "attack" and penalize me.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Grand Jury Right to testify "waived" by 1st 18-b lawyer;

Loss of liberty; malicious prosecution; illegally restrained; illegally detained and stripped searched by corrections officers and sniffed by dogs; legal paperwork from(SDCNY) destroyed and trampeled on by corrections officers and dogs; forced to sleep 2 feet away from another inmate;

**VI.   RELIEF**

State briefly what money damages or other relief you want the court to order.

I'm asking for my immediate release; to be release from jail and the parole warrant lifted. I also ask the this Court to award me money damages of losing my job and the rest of my injuries to the court deem fit.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## TABLE OF CONTENTS

AMENDED COMPLAINT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK ..................................

CALVIN REED, 1:20-cv-08352 (LLS),
AGAINST THE CITY OF NEW YORK,
NEW YORK CITY POLICE DEPARTMENT,
NEW YORK CITY POLICE OFFICERS
DENNIS, NEW YORK CITY POLICE
OFFICERS #1-#2, JOHN and JANE DOE (Detectives),
NEW YORK CITY POLICE OFFICERS JANE and JOHN DOE
#1-#6, .................................................... 1


NEW YORK CITY DEPARTMENT OF CORRECTION,
CYNTHIA BRANN, COMMISSIONER, and ANTHONY
ANNUCCI, ACTING COMMISSIONER, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION (formerly, New York State
Division of Parole), PO ANDRE LOGAN, SPO MEDINA,
AREA SUPV., NYDIA GARCIA, SPO SHANAVIA DANDRIDE,
NYS PAROLE OFFICERS JANE and JOHN DOE #1-#5,

RIKER'S ISLAND CORRECTIONS OFFICERS
JOHN DOE #1-#3; THE NEW YORK CITY DEPARTMENT
OF CORRECTION, BRONX CENTRAL BOOKING NURSE
JANE DOE,..............................................................

I

TABLE OF CONTENTS CONT'D

I.                     LEGAL BASIS FOR CLAIM

II. PLAINTIFF INFORMATION: CALVIN REED, BOOKING CASE #:
     885-20-00017; MANHATTAN DETENTION COMPLEX ("MDC")(Oct.,22,
     2012) (DIN.#:12-A-4997);

     CURRENT PLACE OF DETENTION: THE NORTH INFIRMARY COMMAND
     ("NIC") 1500 Hazen Street, East Elmhurst, New York 11370

III. PRISONER STATUS: PRETRIAL DETAINEE "CHECKED";

     PAROLE VIOLATOR "CHECKED" ............................... 2

## TABLE OF CONTENTS CONT'D

IV. DEFENDANT INFORMATION: ................................ 3

Defendant 1: NYC Police Officer Dennis, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 2: NYC Police Detective Jane Doe, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 3: NYC Police Officer Jane Doe, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 4: NYC Police Officer John Doe, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 5: NYC Police Officer John Doe, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 6: NYC Police Detective John Doe, (shield # Unknown)
             Current Work Address: 450 Cross Bronx Expressway
             ..................................................

Defendant 7: NYC Department of Correction, Commissioner
             Cynthia Brann, (shield # Unknown), Current Work
             Address: 450 Cross Bronx Expressway .............

Defendant 8: NYC Department of Correction, Corrections Officers
             Jane and John Doe #1-#5, (shield # Unknown)
             (special search team), Current Work Address:
             Riker's Island ......................................

Defendant 9: NYC Police Officers John Doe #1-#3 (shield #
             Unknown), Current Work Address: 450 Cross Bronx
             Expressway ......................................

III

## TABLE OF CONTENTS CONT'D

DEFENDANT'S INFORMATION

Defendant 17: New York NYS, Parole/Supv., Nydia Garcia, (shield
              # Unknown), Current Work Address: Bronx Area III
              79 Alexander Ave., Bronx, New York 10457 .........


Defendant 18: New York  NYS,Parole/Supv., Shanavia Dandride,
              (shield # Unknown), Current Work Address: Bronx
              III Area, 79 Alexander Ave., Bronx, New York 10457
              .............................................

*EXHIBIT "A"*

08/24/2020 MON 9:09 FAX                                                                    ☒005/006

---

**NYC.**
**HEALTH+**
**HOSPITALS** | **Lincoln**

LINCOLN MEDICAL CENTER Patient: Calvin, Reed
234 E 149th Street         MRN: 2836368, DOB: 1/25/1959, Sex: M
Bronx NY 10451

## Demographics

| Patient Name | Patient ID | Sex | Date of Birth | Marital Status |
|---|---|---|---|---|
| Calvin, Reed | 2836368 | Male | 01/25/1959 | Unknown |
| Address | Home Phone | Work Phone | Mobile Phone | Religion |
| 2103 HONEYWELL BSMT BRONX NY 10460 | 347-730-7497 | | | Unknown |
| PCP | Insurance Information | Employer | Race | Language |
| | | | Black | English |
| Admission Status | | | | Email |

## Order

BioReference COVID-19 PCR (SO)
[LABC1925] (Order 183085867)

**BioReference COVID-19 PCR (SO) [183085866]**
Electronically signed by: **Megan Corley, NP** on 08/03/20 1651                    Status: **Completed**
Ordering user: Megan Corley, NP 08/03/20 1651          Authorized by: Megan Corley, NP
Frequency: 08/03/20 -
Diagnoses
Encntr for obs for susp exposr to oth biolg agents ruled out [Z03.818]
Questionnaire

| Question | Answer |
|---|---|
| Recent or current symptoms of COVID-19 infection? | Unsure |
| Is the patient under going a procedure/surgery? | No |

## Result

BioReference COVID-19 PCR (SO) (Order 183085867)

## RESULTS

BioReference COVID-19 PCR (SO) [183085867]                Resulted: 08/05/20 0923, Result status: Final result
Resulting lab: BIOREFERENCE LABORATORIES, INC.   Result details
Narrative:
Specimen collected by: MEGAN CORLEY
Recent or current symptoms of COVID-19 infection?->Unsure
Is the patient under going a procedure/surgery?->No
Recent or current symptoms of COVID-19 infection?->Unsure
Is the patient under going a procedure/surgery?->No
Specimen Information

| ID | Type | Source | Collected On |
|---|---|---|---|
| 252021601846 | Nasopharyngeal | Nasal/Oral/Pharyngeal Swab | 08/03/20 1715 |

Day of Arrest

Comment: Nasal/Oral/P

Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| COVID-19 BioReference Lab | Not Detected | Not Detected | — | BioReference Laboratories, Inc. |

Comment:
NOTE: Please consider re-collection of a new specimen, if clinically indicated.

NOTE: The COVID-19 assay has been cleared by the U.S. Food and Drug

---

Printed on 8/24/20  9:02 AM

08/24/2020 MON 9:09 FAX                                                          ☑006/006

NYC
HEALTH+
HOSPITALS | **Lincoln** LINCOLN MEDICAL CENTER Patient:Calvin, Reed
234 E 149th Street         MRN: 2836368, DOB: 1/25/1959, Sex: M
Bronx NY 10451             Acct #: 299438914
                           Visit date: 8/3/2020

---

**RESULTS (continued)**

Administration under the Emergency Use Authorization (EUA). BioReference
Laboratories is designated as a high complexity laboratory by the Clinical
Laboratory Improvement Amendments of 1988(CLIA) and is qualified to perform
this test. ASSAY INFORMATION: Real Time RT-PCR.
Patient samples for this assay have been pooled. All positive samples have
been individually repeated for confirmation. The pooling protocol is pending
FDA review.

Testing Performed By

| Lab Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 181 - BioReference Laboratories, Inc. | BIOREFERENCE LABORATORIES, INC. | James Weisberger, M.D. | 481 Edward H. Ross Dr. Elmwood Park NJ 07407 | 05/05/20 1304 - Present |

---

## END OF REPORT

---

ATTACHMENT - C

 

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES

### DISPOSITION FORM

Form.: 7102R
Eff.: 9/14/18
Ref.: Dir. 3376R-A

| Grievance Reference #:<br># 335628 | Date Filed:<br>8/28/2020 | Facility:<br>NIC: MAIN: 6A |
|---|---|---|
| Inmate Name:<br>REED, CALVIN | Book and Case#:<br>8852000017 | Category:<br>NG: OTHER |

From OCGS Inmate Statement Form, print or type short description of grievance:

**GRIEVANT STATES:**

ON AUGUST 3, 2020, I WAS ARRESTED AT MY WORK OF EMPLOYMENT AND WAS TAKEN TO THE PRECINCT. AFTER HOURS AT THIS PRECINCT. I WAS TRANSFERRED TO DOCS ON 161 STREET BUT WAS DENIED ENTRANCE BECAUSE A NURSE MISUNDERSTOOD AN ANSWER TO HER QUESTION ON WHETHER I COUGHED WITHIN 24 HRS AND UNPROFESSIONALLY ASSUMING I HAD FLU LIKE SYMPTOMS, WHICH I DID NOT AND STILL DON'T. HOWEVER, TO MAKE A LONG STORY SHORT, I ENDED UP ON RIKER'S ISLAND. SEE ATTACHED.

Action Requested by Inmate:   CALVIN REED, AM REQUESTING TO BE TRANSFERRED OFF RIKER'S ISLAND FOR THE SAKE OF GETTING SICK.

---

### STEP 1: FORMAL RESOLUTION

Check one box: ☒ Grievance   ☒ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

ON 8/28/2020, GRIEVANT'S COMPLAINT FORWARDED TO FACILITY FOR FURTHER ASSISTANCE.

---

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☒ Yes, I accept the resolution   ☒ No   ☒ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: if you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer.  You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies.*

| Inmate's Signature: | Date: |
|---|---|

☒   Preliminary Review Requested

| Grievance Coordinator/Officer Signature:<br>*S. CANADY* | Date:<br>8/28/2020 |
|---|---|



NYC
HEALTH+
HOSPITALS | Correctional Health Services

Central Operations, 10-01 Hazen Street, East Elmhurst, NY 11370, (347) 774-7000

| PATIENT NAME:<br>CALVIN REED | LATEST BOOK AND CASE#:<br>8852000017 |
|---|---|
| NYSID:<br>04243043Q | PATIENT FACILITY:<br>NIC |

**12/01/2020 - Lab Report: COVID19 Panel**
**Provider: Eun Lee Kim NP**
**Location of Care: Correctional Health Services**
**Status: UNSIGNED DOCUMENT**

Patient: CALVIN  REED
ID: VitalAxis 04243043Q
Note: All result statuses are Final unless otherwise noted.

Tests: (1) COVID19 Panel (COVID19NYR)
```
OBSERVATION              VALUE                   EXPECTED
-----------              -----                   --------
! SARS-CoV-2 (COVID-19)
                         Not Detected            Not Detected
```
    Disclaimer :
    Reference Range: NOT DETECTED

    Test Information

    The PRL SARS-CoV-2(COVID-19) test is a real-time reverse transcription
polymerase chain reaction (rRT-PCR) test. The SARS-CoV-2 primer and probe set
is designed to amplify and detect RNA from the SARS-CoV-2 in respiratory
specimens from patients as recommended for testing by public health authority
guidelines. The assay employs the CDC-designed primer/probe sequences as
included in the SARS-CoV-2 (2019-nCoV) CDC qPCR Probe Assay and listed below.
SARS-CoV-2-specific sequences target two separate regions of the viral
nucleocapsid (N) gene. Also included is an internal control targeting the
human RNase P (RP) gene. All three targets are detected in a single assay in
multiplex, each with a unique fluorophore-quencher combination

    Limitations:
    1. The test was validated for use only with upper and lower respiratory
specimens.
    2. Negative results do not preclude SARS-CoV-2 infection and should not be
used as the sole basis for treatment or other patient management decisions.
Optimum specimen types and timing for peak viral levels during infections
caused by SARS-CoV-2 have not been determined.
    3. Collection of multiple specimens (types and time points) from the same
patient may be necessary to detect the virus.
    4. A false negative result may occur if a specimen is improperly
collected, transported or handled. False negative results may also occur if
amplification inhibitors are present in the specimen or if inadequate numbers
of organisms are present in the specimen.
    5. Positive and negative predictive values are highly dependent on
prevalence. False negative test results are more likely when prevalence of
disease is high. False positive test results are more likely when prevalence
is moderate to low.
    6. If the virus mutates in the RT-PCR target region, SARS-CoV-2 may not be

NYC
HEALTH+
HOSPITALS | Correctional Health Services

Central Operations, 10-01 Hazen Street, East Elmhurst, NY 11370, (347) 774-7000

| **PATIENT NAME:**<br>CALVIN REED | **LATEST BOOK AND CASE#:**<br>8852000017 |
|---|---|
| **NYSID:**<br>04243043Q | **PATIENT FACILITY:**<br>NIC |

detected or may be detected less predictably. Inhibitors or other types of
interference may produce a false negative result.
    7. An interference study evaluating the effect of common cold medications
was not performed.
    8. Test performance can be affected because the epidemiology and pathology
of disease caused by SARS-CoV-2 is not fully known. For example, clinicians
and laboratories may not know the optimum types of specimens to collect, and
when during infection these specimens are most likely to contain levels of
virus that can be readily detected.
    9. Detection of viral RNA may not indicate the presence of infectious
virus or that SARS-CoV-2 is the causative agent for clinical symptoms.
    10. The performance of this test has not been established for monitoring
treatment of SARSCoV-2 infection.
    11. The performance of this test has not been established for screening of
blood or blood product for the presence of SARS-CoV-2.
    12. This test cannot rule out diseases caused by other bacterial or viral
pathogens.


    This test was developed, and its performance characteristics determined by
the Pandemic Response Laboratory. It has not been cleared or approved by the
U.S. Food and Drug Administration. The FDA has determined that such clearance
or approval is not necessary. The test methodology has been validated in-house
and the methodology as well as the validation data, reviewed by the Clinical
Laboratory Evaluation Program of the New York State Department of Health. The
validation data is available at the Laboratory at the address below. The
laboratory also participates in inter-laboratory testing under the auspices of
the College of American Pathologists, in keeping with the Clinical Laboratory
Improvement Amendments of 1988 (CLIA 88). Therefore, this test is used for
clinical purposes. It should not be regarded as investigational or for
research on this basis alone.

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 12/01/2020 11:36 AM

_____

(1) Order result status: Final
Collection or observation date-time: 12/01/2020 11:33:47
Requested date-time:
Receipt date-time:
Reported date-time: 12/01/2020 11:14
Referring Physician:
Ordering Physician: Eun Lee Kim (kime26)
Specimen Source:
Source: VitalAxis
Filler Order Number: 10301733
Lab site:



NYC
HEALTH+
HOSPITALS | Correctional Health Services

Central Operations, 10-01 Hazen Street, East Elmhurst, NY 11370, (347) 774-7000

| PATIENT NAME: | LATEST BOOK AND CASE#: |
|---|---|
| CALVIN REED | 8852000017 |
| NYSID: | PATIENT FACILITY: |
| 04243043Q | NIC |

-----------------

The following results were not dispersed to the flowsheet:

  SARS-CoV-2 (COVID-19), Not Detected, (F)

*EXHIBIT "A"*

**ATTACHMENT - D**
## CORRECTION DEPARTMENT
## CITY OF NEW YORK

**INMATE INCOMING TELEPHONE MESSAGE**

Form :424
Rev. : 3/15/18
Ref. :DIR. 4007R-A

**FACILITY** West Facility

**DATE** 8-12-20

**PRINT ALL INFORMATION**

**NAME OF INMATE** Reed Calvin

**LOCATION** #885-20-00017  SP 11

**TELEPHONE CALL**

**CALL RECEIVED BY**

**NAME OF CALLER** Mr. Oberlander

**RELATIONSHIP** Legal Aid

**TELEPHONE NUMBER** 212-587-7977

**ADDRESS**

**MESSAGE :** call lawyer

**MESSAGE RECEIVED**

**INMATE'S SIGNATURE** Calvin Reed

**NOTIFIED BY**

**RETURN PHONE CALL REQUESTED** YES ☐  NO ☐
**RETURN PHONE CALL GRANTED** YES ☐  NO ☐

**IF NO, GIVE BRIEF EXPLANATION :**

**Signature of Officer**   **Title**   **Shield/ I.D. Number**

ONE (1) ORIGINAL TO INMATE
ONE (1) COPY TO FACILITY FILE

**Current Housing Facility:**

NIC () (North Infirmary Command)

**Arrest Date:**

03-AUG-2020

**Arrest Number:**

ct direct

**Next Court Date:**

10-FEB-2021

**Bail and/or Bond:**

$25,000.00 bail or $50,000.00 bond

**Charge Information**

**Docket:**

CR-010890-20BX

**Indictment:**

00489/2020

**Court Part:**

IDV

**Court Name:**

BRONX CRIMINAL CT - MAIN FL

**Credit Card Amount:**

$25,000.00

**Charge:**

140.30 FB ( B Felony)

**Warrants**

| Warrant # | Type | Charge | Severity |
|---|---|---|---|
| 00830107 | New York State Department of Parole | 140.30 ( PL ) | F |

Search for another inmate

Back to search results

# NYPD PROPERTY RELEASE

**TO: N.Y.P.D. Property Clerk's Office**

DATE: 9 / 5 / 2020

I, Calvin Reed , was arrested by New York City Police
Department Officers within the 48th Precinct on 8 / 3 / 20 .
I am currently detained at the NIC Correctional Facility, 1500
Hazen St, E. Elmhurst, NY 11370. The arresting officers took the

following items from my persons at the time of the arrest:

"Boost Mobil" STYLE 55 Phone &
Wireless headPhones

It is my understanding that these items are not instruments of criminality nor
are they connected to the crime I was arrested for. I do hereby
authorize Jean I
Tindall of 2111 Southern Blvd,
Bronx, New York 10460
to retrieve all of my property being held by the New York City Police
Department in relations to the above arrest.

Arresting Precinct: 48th     Voucher # Never gave me one
Date of Arrest: 8 / 3 / 2020

Respectfully,

Calvin Reed

Sworn to before me on this 5th
day of September , 2020 .

OLGA L. RIVERA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RI6383962
BRONX COUNTY
Commission Expires 12/03/2022

Date: 1/29/21

To: Orleans CF 3531
Albion, NY 14411-9199

From: Mr. Calvin Reed
1500 Hazen St.,
East Elmhurst, N.Y. 11370

RE: FREEDOM OF INFORMATION REQUEST

Dear Sir/Madam:

This is a request under the Freedom of Information Act as amended (5 U.S.C.S., section 552) the Privacy Act (5 U.S.C.S. 552a) and the New York Public Officers Law, Section 84-90.

I wish to obtain the following information and records, etc.

COMMITMENT ORDER AND ANYTHING ELSE THAT PERTAINS TO MY
SENTENCE FROM OCTOBER 22,2012 to NOVEMBER 5,2018

If all or any requests is denied, please list specific exemptions which is/are being cited to withhold information.

If you determine that some portion of this requested material are exempt, I will expect, as the Act provides, that you will provide me with the remaining non-exempt portions. I, of course, reserve the right to appeal any determination to withhold information and expect that you will provide me with the address and office where an appeal may be sent.

As your agency should be aware, the amended Freedom of Information Act requires you to reduce or waive search and/or copying fees when the release of the requested information is in the "public interest". It is my belief that the above requested information falls into this category and I ask that you waive such fees. Again as the Act requires, I expect a reply within ten (10) working days. If there are any questions regarding this request, please contact me at the address listed above.

Respectfully submitted,

Calvin Reed

Sworn to before me on this
29th day of January , 2021

OLGA L. RIVERA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RI6383062
BRONX COUNTY
Commission Expires 12/03/2022



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM

Form.: 7102R
Eff.: 9/14/18
Ref.: Dir. 3376R-A



| Grievance Reference #:<br># 335716 | Date Filed:<br>8/28/2020 | Facility:<br>NIC: MAIN: 6A |
|---|---|---|

| Inmate Name:<br>REED, CALVIN | Book and Case#:<br>8852000017 | Category:<br>NG: STAFF |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance:  GRIEVANT STATES:  UPON
BEING TRANSFERRED HERE FROM WEST FACILITY. I DID NOT HAVE MY ASTHM PUMP
IN MY HAND AND I WAS PUT INSIDE A DOCs' CORRECTION VAN/CAGE, IN THE BACK OF
VAN WHERE THERE WERE NO AIR CONDITION NOR AIR TO BREATHE. I WAS LEFT INSIDE THIS
VAN FOR APPROXIMATELY 56 MINUTES OR MORE. IT SEEMED LIKE 102 IN THE BACK OF THAT VAN.
I COULDN'T BREATHE NOR WAS THE BACK WINDOWS CRACKED FOR AIR. WHILE I YELLED FOR HELP
THE GUARDS WERE TALKING AND LAUGHING OUTSIDE OF THE VAN. SEE ATTACHED

Action Requested by Inmate:    I'M ASKING TO BE TRANSFERRED OFF RIKER'S ISLAND BECAUSE I FEAR FOR
MY LIFE HERE AMONG THE GUARDS ACTING UNPROFESSIONAL.

## STEP 1: FORMAL RESOLUTION

Check one box: ☐ Grievance  ☑ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

ON 8/28/2020, GRIEVANT'S COMPLAINT FORWARDED TO THE FACILITY FOR FURTHER
ASSISTANCE.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution  ☐ No  ☐ I request to appeal the resolution of this grievance to the Commanding officer.

Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer.  You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies.

| Inmate's Signature: | Date: |
|---|---|

☐  Preliminary Review Requested

| Grievance Coordinator/Officer Signature:<br>*S. CANADY* | Date:<br>8/28/2020 |
|---|---|

2103 Honeywell,LLC
1 State Street
32nd Floor
New York, N.Y. 10004


ATTN: <u>SENIOR EMPLOYER</u>

January 22, 2021


Re:        <u>Employment</u>


Dear Mr. Matthis:

     Please find enclosed copies of my last pay stub, along
with a copy of a "certificate of release" to post-release
supervision which was adminsitratively imposed by the
Department of Corrections And Community Supervision (formely,
New York State Division of Parole), ("DOCCS").


     Also, please find enclosed, the <u>People ex rel. White v.</u>
<u>Warden, Riker's Island Correctional Facility</u>, 15 Misc.3d 360;
this so-called parolee challenged the Division of Parole by
filing a State of Writ of Habeas Corpus, Pursuant To CPLR
Section (7002[a]), a petition I'm about to commence myself.


     In other words, the reason I was arrested is because of
the "post-release supervision," which, during sentencing on
October 22, 2012, the Judge never pronounced it in my sentence.
Thereafter, three (3) days prior to my release on November 2,
2018, DOCCS handed me a form to sign in voilation of the Due
Process Law; State and Federal.


     "Under a recent case law, a court's failure to
pronounce a required period of post-release supervision at the
time of sentence is unenforceable. " <u>People v. Sparbar</u>,10 N.Y.
3d 457 (2008); <u>Garner v. Dept. of Corrections</u>,10 N.Y.3d 358
(2008).

Mr. Matthis, my reason for enclosing my last pay stub is because I thought you would not remember who I am. However, I am asking you, in particular, would you write a letter for recommendation on my behalf to send to Parole? I tried calling the Office but was denied.  Your letter would help me get release even quicker because that is what Court's favor from an inmate.

Moreover, I am still challenging the post-release supervision, and have it expunged from my record. I very much would appreciate my former position back again, but only with your help. Therefore, Happy New Years, and may you and your family be blessed through out this year.

Respectfully Submitted,

*Calvin Reed*

Mr.Calvin Reed B&C#:
885-20-00017 ("NIC") Riker's Is.
1500 Hazen Street
East Elmhurst, N.Y. 11370

Sworn To Before Me on this
22th day of January,
20 21.

NOTARY PUBLIC

OLGA L. RIVERA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RI6383962
BRONX COUNTY
Commission Expires 12/03/2022

**Criminal Court**
**Of the**
**City Of New York**

\*\* *PLEASE RETURN THIS FORM WITH YOUR*
*PAYMENT & REQUEST* \*\*





I've already paid for
the disposition last
Month (March), 2021
(see Ex. "B" for request)

**Bronx County**
**265 E. 161st Street**
**Bronx, NY 10451**
**Tele- 718-618-2460**
**Fax-917-522-4846**

Date: 10-5-20

**Correspondence Unit**

To Whom It May Concern:

The attached request has been returned because:

[✓] Required fee of $10.00 for **EACH** Certified Certificate of Disposition is **NOT** enclosed.
Forward a **U.S. Postal Money Order, Attorney's check or Inmate funds account draft** payable
to: **Bronx Criminal Court**, along with this order form, your original correspondence and a self-
addressed stamped envelope. (*We **DO NOT** accept personal checks*)

[✓] **Insufficient information.** Please complete the information on this form, and return it with **your
original request and payment.**

[ ] **No Public Record / Sealed Case.** Please send an **Original Notarized** letter from the defendant
stating that you personally or your office can obtain the information on his/her sealed case **or** Obtain
an **UNSEALING ORDER** from a Supreme Court Judge stating that this case be unsealed for you
to obtain the disposition and/or copy of the court papers.

Name: Calvin Reed

Aka (if given): _____

Address at time of arrest: 2759 Webster Ave., Bronx, N.Y. 10458

Date of Birth: 1/25/62

Date of Arrest: 9/9/19 (received disposition between Oct., & Dec., 2019)

County of Arrest: Bronx County

Original crime or offense charged: N/A

Docket/Case number: N/A

N.Y.S.I.D.: 042430430

*EXHIBIT "B"*

September 28, 2020

Dear Assistant,

We already had this conversation before my fiancé got locked up that, I'm not pressing no charges against my fiancé! I'm dropping all charges against him and refuse to testify at a trial or anything else against My future husband. None of the Charges True. I was angry with him because he owes me money.

Signed

Ms. Betty McCain

Yours, etc

~~Betty Morgan~~
Complaintant

Sworn To before me this

1 day of October , 2020.

ALBERTO CURI JR
Notary Public - State of New York
NO. 01CU6121127
Qualified in Bronx County
My Commission Expires Jan 10, 2021

Notary Public / Commissioner of Deeds

nov. 24 - 2020

To: Whom This May Concern:
Dear Mr. District attorney, my
name is Pat Keys and I'm ms.
mcCains neighbor
   mr. Calvin reed is a Very hard
Working gentleman and he has
been moved out of ms. mc cains
apartment since the end of may 2020
He Did not take nothing from or out
of ms. mc Cain's apartment.

Patricia Kee
Signed

Sworn to before me
On this 16 Day of December 2020

notary Public

ALBERTO CURI JR
Notary Public - State of New York
NO. 01CU6121127
Qualified in Bronx County
My Commission Expires Jan 10, 2021

Affidavit

I, Betty McCain, hereby attest and affirm under oath and under penalty of perjury that the following statements are true:

1. I am Calvin Reed's fiancée since 2001.

2. The statement that Police Officers wrote on my behalf on July 10, 2020, is not true.

3. As I wrote in my sworn letter dated September 28, 2020, I suffer from Parkinson's disease and I do not wish to pursue any criminal charges against Mr. Reed.

4. I have no one else to take care of me ad help me doing things around my apartment.

5. I do not need an order of protection against Mr. Reed and I never asked or signed for one.

6. Mr. Reed is a hard working man and he never put his hand on me, nor did he threatened me to testify against him.

7. Mr. Reed is in jail for something that he did not do.

I attest that the previous statements are personally known to me and are true.

_Betty McCain_
Betty McCain


Sworn to before me by Betty McCain, on this _23_ of December, 2020.

_Notary Public_
Notary Public

ALBERTO CURI JR
Notary Public - State of New York
NO. 01CU6021127
Qualified in Bronx County
My Commission Expires 11/0/2021

Date: *Sept. 23/20*

To: *Bronx Criminal Court*
*265 East 161st Street*
*Bronx, New York 10451*

From: *Calvin Reed*
*1500 Hazen Street (NIC)*
*E. Elmhurst N.Y 11370*

RE: FREEDOM OF INFORMATION REQUEST

Dear Sir/Madam

This is a request under the Freedom of Information Act as amended (5 U.S.C.S., section 552) the Privacy Act (5 U.S.C.S. 552a) and the New York Public Officers Law, Section 84-90.

I wish to obtain the following information and records, etc. *COPY OF:*

*A DISPOSITION ON A DISMISSAL IN BETWEEN Oct. AND DEC. 2019*

If all or any requests is denied, please list specific exemptions which is/are being cited to withhold information.

If you determine that some portion of this requested material are exempt, I will expect, as the Act provides, that you will provide me with the remaining non-exempt portions. I, of course, reserve the right to appeal any determination to withhold information and expect that you will provide me with the address and office where an appeal may be sent.

As your agency should be aware, the amended Freedom of Information Act requires you to reduce or waive search and/or copying fees when the release of the requested information is in the "public interest". It is my belief that the above requested information falls into this category and I ask that you waive such fees. Again as the Act requires, I expect a reply within ten (10) working days. If there are any questions regarding this request, please contact me at the address listed above.

Respectfully submitted,

*Calvin Reed*

Sworn to before me on this
24th day of *September*, 2020

OLGA L. RIVERA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RI6383962
BRONX COUNTY
Commission Expires 12/03/2022

| Agency: NYPD | A | **New York State DOMESTIC INCIDENT REPORT** | Incident # |

**Incident**

| Reported Date (MMDDYYYY) 07 27 2020 | Time (24 hours) 1340 | Occurred Date (MMDDYYYY) 07 27 2020 | Time (24 hours) 1300 | ☐ Officer Initiated ☑ ICAD (NYC) 8782 | ☐ Radio Run | ☐ Walk-In | Complaint # |

| Address (Street No., Street Name, Bldg. No., Apt No.) 2111 SOUTHERN BLVD | City, State, Zip BRONX NY |

**Suspect (P2)**

| Name (Last, First, M.I.) (Include Aliases) REED CALVIN | DOB (MMDDYYYY) 01 25 1962 | Age: | ☐ Female ☑ Male ☐ Self-Identified: |
| Address (Street No., Street Name, Bldg. No., Apt No.) 111 SOUTHERN BLVD | Suspect Phone Number: | Language: |
| City, State, Zip | ☐ White ☑ Black ☐ Asian ☐ American Indian ☐ Other | ☐ Hispanic ☐ Non Hispanic ☐ Unknown ☐ Other Identifier: |
| Do suspect and victim live together ? ☑ Yes ☐ No | Suspect/P2 present? ☑ Yes ☐ No | Was suspect injured? ☐ Yes ☑ No If yes describe: | Possible drug or alcohol use? ☐ Yes ☑ No | Suspect supervised? ☐ Probation ☐ Parole ☑ Not Supervised ☐ Status Unknown |

| Suspect (P2) Relationship to Victim (P1) ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☐ Former Intimate Partner ☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative: ☐ Other: | Do the suspect and victim have a child in common? ☐ Yes ☑ No |

**Victim Interview**

Emotional condition of VICTIM? ☑ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other:

What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident? _____

Did suspect make victim fearful? ☑ Yes ☐ No If yes, describe:

**Weapon Used?** ☐ Yes ☑ No Gun: ☐ Yes ☐ No Other, describe: _____

**Access to Guns?** ☐ Yes ☑ No If yes, describe: _____

Injured? ☑ Yes ☐ No If yes, describe: _____

In Pain? ☑ Yes ☐ No If yes, describe: _____

**Suspect Threats?** ☑ Yes ☐ No If Yes, Threats to: ☑ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide ☐ Other Describe:

**Strangulation?** ☐ Yes ☑ No ☐ Loss of Consciousness ☐ Urination/Defecation ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing

**Visible Marks?** ☐ Yes ☑ No If yes, describe:

**Suspect**

What did the SUSPECT say (Before and After Arrest):

710.30 completed? ☐ Yes ☐ No

**Incident Narrative**

Briefly describe the circumstances of this incident:

AT THE P1 STATES P2 STRUCK HER MULTIPLE TIMES IN THE SIDE OF THE FACE AREA W/ A CLOSED FIST CAUSING HER PAIN AND INJURY. NO VISIBLE MARKS ON P1'S FACE. P1 HAS UNKNOWN SOCIAL MEDIA. HANGS OUT AROUND THE SOUTHERN BLVD. NO CELL, NO JOB, ETC. P1 FLED PRIOR TO PD ARRIVAL.

**Evid**

| DIR Repository checked? ☐ Yes ☐ No | Order of Protection Registry checked? ☑ Yes ☐ No | Order of Protection in effect? ☐ Yes ☐ No ☐ Refrain ☐ Stay Away |
| Evidence Present? ☐ Yes ☐ No | Photos taken: ☐ Victim Injury ☐ Suspect Injury ☐ Other: | Other Evidence: ☐ Damaged Property ☐ Videos ☐ Electronic Evidence ☐ Other: | Destruction of Property? ☐ Yes ☑ No If yes, Describe: |

**Offense**

| Offense Committed? ☑ Yes ☐ No | Was suspect arrested? ☑ Yes ☐ No If no, explain: | Offense 1 ASSAULT 2 | Law (e.g. PL) | Offense 2 | Law (e.g. PL) |

| Agency: NYPD | B | Complaint # |
|---|---|---|

**Describe Victim's prior domestic incidents with this suspect** (Last, Worst, First):

Prior History

If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider: ( ) _____

| Has Suspect ever: | | Is suspect capable of killing you or children? | ☐ Yes ☑ No |
|---|---|---|---|
| Threatened to kill you or your children? ☐ Yes ☑ No | | Is suspect violently and constantly jealous of you? | ☐ Yes ☑ No |
| Strangled or "choked" you? ☐ Yes ☑ No | | Has the physical violence increased in frequency or severity over the past 6 months? | ☑ Yes ☐ No |
| Beaten you while you were pregnant? ☐ Yes ☑ No | | | |

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment? ☐ Yes ☑ No

If Yes, the Officer must contact the **NYS Child Abuse Hotline Registry # 1-800-635-1522.**

| Was DIR given to the Victim at the scene? ☑ Yes ☐ No if **NO**, Why: | Was Victim Rights Notice given to the Victim? ☑ Yes ☐ No if **NO**, Why: |
|---|---|

**Signatures:**

| Reporting Officer (Print and Sign include Rank and ID#) P O ORTIZ   9L93G5 | Supervisor (Print and Sign include Rank and ID#) |
|---|---|

## STATEMENT OF ALLEGATIONS/SUPPORTING DEPOSITION

* Officers are encouraged to assist the Victim in completing this section of the form.

## Suspect Name (Last, First, M.I)

I _____ (Victim/Deponent Name) state that on _____ / _____ / _____, (Date)

at _____ (Location of incident) in the County/City/Town/Village

of the State of New York, the following did occur: _____

(Use additional page as needed)

**False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.**

Victim/Deponent Signature

Date 2/27/20

Witness or Officer Signature

Date 7.7.2020

Interpreter Signature and Interpreter Service Provider Name

Interpreter Requested ☐ Yes ☐ No  Interpreter Used ☐ Yes ☐ No

Date _____

**Note:**
Whether or not this form is signed, this DIR Form will be filed with Law Enforcement.

Page 2 of 2

VICTIM / COMPLAINANT COPY

NYS DOMESTIC AND SEXUAL

*EXHIBIT "C"*

## Personal Earning Statement 

**2103 Honeywell LLC**
1 State Street
32nd Floor
New York, NY 10004
(212) 320-2400

| Empl# | SS# | Department | Clock No. | Pay Type |
|---|---|---|---|---|
| R03 | XXX-XX-7118 | 100 | | Hourly |

**CALVIN REED**
2759 WEBSTER AVE APT PH
BRONX, NY 10458

Pay Period: From: 05/31/2020 To: 06/13/2020
Pay Date:    06/17/2020        Check No.    500244

| Earnings | Department | Rate | Hours | Amount | YTDHrs | YTDAmt |
|---|---|---|---|---|---|---|
| Regular | Maint | 15.00 | 80.00 | 1,200.00 | 240.00 | 3,600.00 |
| Holiday | Maint | 15.00 | -8.00 | -120.00 | 8.00 | 180.00 |
| Holiday | Maint | 22.50 | 8.00 | 180.00 | 8.00 | 180.00 |
| **Total Gross Pay** | | | 80.00 | $1,260.00 | 248.00 | $3,760.00 |

| Taxes | Exemptions | Addl. | Amount | Year-To-Date |
|---|---|---|---|---|
| Social Sec. | | | 78.12 | 234.36 |
| Medicare | | | 18.27 | 54.81 |
| Federal | Single - 0 | | 86.37 | 244.71 |
| NY State | Single - 0 | | 49.35 | 140.75 |
| NY Local | Single - 0 | | 34.52 | 98.58 |
| NY Paid Leave | | | 3.40 | 10.20 |
| NY Disability | | | 1.20 | 4.20 |
| **Total Taxes** | | | 271.23 | 787.61 |

**Net Pay** $988.77

**Important Notes**

---

## Personal Earning Statement 

**2103 Honeywell LLC**
1 State Street
32nd Floor
New York, NY 10004
(212) 320-2400

| Empl# | SS# | Department | Clock No. | Pay Type |
|---|---|---|---|---|
| R03 | XXX-XX-7118 | 100 | | Hourly |

**CALVIN REED**
2759 WEBSTER AVE APT PH
BRONX, NY 10458

Pay Period: From: 05/03/2020 To: 05/16/2020
Pay Date:    05/20/2020        Check No.    500236

| Earnings | Department | Rate | Hours | Amount | YTDHrs | YTDAmt |
|---|---|---|---|---|---|---|
| Regular | Maint | 15.00 | 80.00 | 1,200.00 | 88.00 | 1,320.00 |
| **Total Gross Pay** | | | 80.00 | $1,200.00 | 88.00 | $1,320.00 |

| Taxes | Exemptions | Addl. | Amount | Year-To-Date |
|---|---|---|---|---|
| Social Sec. | | | 74.40 | 81.84 |
| Medicare | | | 17.40 | 19.14 |
| Federal | Single - 0 | | 79.17 | 79.17 |
| NY State | Single - 0 | | 45.70 | 45.70 |
| NY Local | Single - 0 | | 32.03 | 32.03 |
| NY Paid Leave | | | 3.24 | 3.58 |
| NY Disability | | | 1.20 | 1.80 |
| **Total Taxes** | | | 253.14 | 263.24 |

**Net Pay** $946.86

**Important Notes**

**2103 Honeywell LLC**
1 State Street
32nd Floor
New York, NY 10004
(212) 320-2400

**Personal Earning Statement**

| Empl# | SS# | Department | Clock No. | Pay Type |
|-------|-----|------------|-----------|----------|
| R03 | XXX-XX-7118 | 100 | | Hourly |

CALVIN REED
2759 WEBSTER AVE APT PH
BRONX, NY 10458

Pay Period:  From: 06/14/2020 To: 06/27/2020
Pay Date:    07/01/2020      Check No.   500247

| Earnings | Department | Rate | Hours | Amount | YTDHrs | YTDAmt |
|----------|------------|------|-------|--------|--------|--------|
| Regular | Maint | 15.00 | 32.00 | 480.00 | 272.00 | 4,080.00 |
| Total Gross Pay | | | 32.00 | $480.00 | 280.00 | $4,260.00 |

| Taxes | Exemptions | Addl. | Amount | Year-To-Date |
|-------|------------|-------|--------|--------------|
| Social Sec. | | | 29.76 | 264.12 |
| Medicare | | | 6.96 | 61.77 |
| Federal | Single - 0 | | 0.31 | 245.02 |
| NY State | Single - 0 | | 7.82 | 148.57 |
| NY Local | Single - 0 | | 5.90 | 104.48 |
| NY Paid Leave | | | 1.30 | 11.50 |
| NY Disability | | | 1.20 | 5.40 |
| | | Total Taxes | 53.25 | 840.86 |

| Net Pay | | $426.75 |
|---------|--|---------|

**Important Notes**

## PAROLE VIOLATION

ON OR ABOUT DECEMBER 6, 2019, I WAS REVOKED AND RESTORED WHILE
INCARCERATED ON RIKER'S ISLAND. ON JANUARY 7,2020, I WAS RELE-
ASED TO THE SAMARITAN DAYTOP VILLAGE RESIDENTIAL PROGRAM.
WHILE THERE AT THE PROGRAM, MY PAROLE OFFICER HAD VISIT ME
TWICE WITHOUT ANY INCIDENTS ON MY BEHALF; I PARTICIPATED IN
ALL PROGRAM SESSIONS,ETC.  ON FEBRUARY 7,2020 ABOUT 8:05 a.m.,
I WAS ESCORTED TO QUEENS BY ANOTHER CLIENT FOR A CLINIC
APPOINTMENT AT "BRIGHT POINT." WHILE AT BRIGHT POINT, I OBTAI-
NED A DOCTOR'S NOTE AND RETURNED BACK TO THE PROGRAM. AS I
PREPARED MYSELF TO GO TO BED, A FEMALE STAFF WORKER STOPPED ME
AND ASKED "WHERE WERE YOU," I REPLIED AND TOLD HER THAT I WAS
AT THE CLINIC IN QUEENS. THEREAFTER, SHE BECAME AGRESSIVE AND
ORDERED ME TO COME WITH HER BACK AT THE FRONT DESK TO SEE IF I
WAS CHECKED OF MY PERSON.

     SHE ALSO CALLED A COUNSELOR WHO CLEARED AND GAVE ME A PASS
TO GO TO THE CLINIC, ADMINISTER A BREATHALYZER TEST. THE
COUNSELOR TRIED FIVE (5) TIMES BUT FAILED TO GET RESULTS. HE
THEN TOLD ME TO WAIT WHILE HE GO AND FIND ANOTHER KIT. HOWEVER,
I ASKED TO TAKE A CIGARETTE SMOKE BREAK AND HE ALLOWED ME TO
STAND FIVE FEET AWAY FROM THE ENTRANCE TO THE FRONT DOOR OUTSIDE.
AFTER TWO (2) MINUTES OR SO, I KNOCKED ON THE DOOR TO COME BACK
IN BUT NO ONE OPENED THE DOOR.

     AT THAT TIME, I WAS VERY SICK WITH THE FLU AND SO I LEFT
AND WENT TO A DROP-IN CENTER WITHOUT MY PROPERTY OR PAPERWORK TO
CALL ANYONE. I DID NOT HAVE NO WHERE TO GO BUT TO A SHELTER.
HOWEVER, I WENT TO MY FIANCE'S APARTMENT AND REMAINED THERE UNTIL
I RETRIEVED MY BELONGINGS. IN THE MONTH OF MARCH 2020, I GOT A
JOB WORKING FOR 2103 HONEYWELL LLC, (see, paystubs attached).

     UPON MY RELEASE FROM ORLEANS CF., I MADE MY FIRST INITIAL
REPORT TO SEE MR.LOGAN, MY PAROLE OFFICER. WHILE AT HIS OFFICE, I
ASKED HIM TO PLEASE REFER ME TO ("CEO"), A JOB WORK-FORCE THAT
EMPLOYS PAROLE RELEASEES. HE TOLD ME "NO." AND THAT, I HAVE TO
PROGRAM AND RESIDE IN A SHELTER. I TRIED EXPLAINING TO HIM AFTER
LOSING TRIAL IN 2012, SERVING ALMOST SEVEN ½ YEARS OF PROGRAMMING
I WOULD LIKE TO WORK AND SUPPORT MYSELF INSTEAD OF BEING ON PUBL-
IC ASSISTANCE. IN JANUARY 12,2019,....WHILE AT A SHELTER IN QUEENS
I RECEIVED A HOUSING VOUCHER TO GET AN APARTMENT, BUT HIS DECISI-
ON DID NOT CHANGE.

HOWEVER, ON THE 4th OF AUGUST 2020, THAT MORNING I WAS ARRAIGNED IN BROOKLYN, A HALF HOUR AFTER, I WAS TRANSFERRED TO WEST FACILITY ON RIKER'S ISLAND AROUND 6:30 a.m. ON AUGUST 7, 2020, MY PAROLE OFFICER, MR.LOGAN, SHOWED UP AT 7:25 p.m. THAT EVENING TO SERVE THE PAROLE VIOLATION PAPERS IN VIOLATION OF EXECUTIVE LAW SEC.259-i(3)(c)(iii);

"requires that within three (3) days of the execution of

the warrant, the elleged, violator be given written notice of

the time, place and purpose of the hearing and, of the alleged

violatátor's rights at the hearing."

MR.LOGAN ARRIVED HOURS LATTER, NOT TO MENTION THAT ON THE 19th OF AUGUST 2020, WAS SUPPOSE TO BE MY PRELIMINARY HEARING.

"Proper notice of a charged violation is a basic

requirement of the legal process due a parolee facing re-inca-

rceration for violation of parole." Morrissey v. Brewer, 408

US 471, 489. "failure to serve timely dictates that the

warrant be voided (see generally, People ex rel. Smith v.

New York State Bd. of Parole, 131 AD2d 401, 517 NYS2d 145 [2d

Dept.1987])."

HONESTLY, UPON BEING RELEASED ON NOVEMBER 5,2018 AND AFTER SERVING SEVEN (7) AND A HALF (½) YEARS IN PRISON AND OF PROGRAMMING, I VOWED TO WALK A STRAIGHT LINE WHEN RETURNING TO MY COMMUNITY ... WORKING AND MAINTAINING MY INTEGRITY. HOWEVER, ON SEPTEMBER 13,2019, I TURNED MYSELF INTO THE PAROLE OFFICE FOR FAILING TO INFORM MR.LOGAN ABOUT "POLICE CONTACT" THAT STEMS FROM AN ABSOLUTE MISUNDERSTANDING BETWEEN A FRIEND AND I. I WAS ARRESTED AND RELEASED TWO (2) DAYS LATER. AT THAT TIME I WAS RESIDING AT A "BRC" MEN SHELTER ON WEST FORDHAM ROAD IN THE BRONX. MY PERSONAL PROPERTY WAS LOSS. NEVERTHELESS, I ARRIVED AT THE PAROLE OFFICE, BRONX 3, AND WAS ASSAULTED BY 6 PAROLE OFFICERS INCLUDING MR.LOGAN; THEY BEAT ME WITH BATONS FOR NO REASON. MR.LOGAN EXERTED PHYSICAL VIOLENCE AND WILLFULLY STRUCK ME, UNNECESSARILY AND WITHOUT ANY ADEQUATE REASON. THE EXEC.LAW (sec.243) REQUIRES:

That, "Parole Officers shall have 'ability for influencing human behavior' and shall be a 'helpful influence upon persons placed under their supervision.'"


THIS ASSAULT WAS UNPROVOKED AND ENTIRELY UNNECESSARY. BEFORE THIS INCIDENT OCCURRED, MR.LOGAN INTENDED TO SIGN ME INTO THE "CORNER STONE" REHABILITATION CENTER FOR FIFTHTEEN (15) DAYS UNTIL, HE "SNAPPED"AND GRABBED MY ARM WHILE I WAS TRYING TO SIGN MY NAME ON THE FORM FOR CORNER STONE. AFTERWARD, I WAS HANDCUFFED AND BEATEN WITH BATONS, AS MENTIONED HERE IN THIS WRITING ABOVE.


HE INTENDED TO SEND ME TO RIKER'S ISLAND, BUT FOR SOME REASON HE WAS RELUCTANCE AND DECIDED TO SEND ME TO EDGECOMBE. I DID NOT KNOW WHAT TO DO OR SAY BUT, I AGREED. HE SAID, "YOU WOULD SERVE 45-DAYS AND GO HOME." "BUT, IF YOU INFORM THE NURSE THAT YOU WERE HURT AND BRUISED, THEY WILL REJECT YOU AND YOU'LL GO TO RIKER'S ISLAND INDIFINITELY."

MY VIOLATION PAPERS; THE CONTINUATION FORM: 3010CS AND/OR 3041CS STATES:

1.  "I will seek, obtain and maintain 'employment' and/or academic/vocational program ... " Etc. In People ex rel Watson,v. Commissioner of New York City Dep't of Correction, 149 A.D.2d 120 ; ("As a condition of his parole, Petitioner was required to 'seek, obtain and maintain employment,'").


IN MY SITUATION I OBEYED THE VOICE OF MY PAROLE OFFICER, MR.LOGAN, AND SIGNED MYSELF INTO AN OUT-PATIENT PROGRAM IN 2018-19. MONTHS PASSED ON WITHOUT WORK, STILL REPORTING UNTIL, IN THE MONTH OF SEPTEMBER 2019, I END UP VIOLATING MY PAROLE. BUT AFTER SERVING THAT VIOLATION TIME, I WAS ABLE TO FIND A JOB ON MY OWN THEN, AND DURING THE COVID-19,PANDEMIC, UNFORTUNATELY, AFTER BEING "LOCKED-OUT," FROM THE PROGRAM.

-13-

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
ARREST NOTIFICATION

```
TO:     AREA OFFICE:     BRONX III
        PO:    LOGAN,ANDRE                        DATE: 08-04-2020
        SPO:   DANDRIDGE,SHANAVIA                 TIME: 01:35 PM
        AREA SUPERVISOR:  GARCIA,NYDIA

FROM:  PARTNER - ALERTS SYSTEM

RE:    REED,CALVIN
                                                  NYSID:  04243043Q

THE ABOVE INDIVIDUAL WAS ARRESTED ON: 08-03-2020
                                                  CRIME DATE: 07-27-2020

USING THE NAME: REED,CALVIN

FOR:
         0602          D FEL          ASSAULT 2ND*
         0602          D FEL          ASSAULT 2ND*
         0503          D FEL          ROBBERY 3RD
         7110          A MISD         CRIM OBS OF BREATH/BLOOD CIRC-APPLY PRES
         1100          A MISD         PETIT LARCENY

BY:     NYCPD PCT 048

COURT OF ARRAIGNMENT: UNKNOWN
COURT CONTROL NUMBER: ————————       AGENCY ID NUMBER:

REPORTED ADDRESS                     PARTNER ADDRESS

                                     1381 UNIVERSITY AVE
                                     BRONX              NY

TRAN #:         FAX #:

SUPERVISION STATUS OF THIS CASE IS: NON-REPT

WARRANT # 0830107 HAS BEEN POSTED
NO WANTED NOTICE IS POSTED FOR THIS CASE

PLEASE REFER TO HIT NUMBER 04243043Q20200803001 IF CONTACTING THE
QUALITY & CONTROL ALERTS UNIT

WARNING WARNING WARNING WARNING WARNING WARNING WARNING WARNING
THIS RELEASEE'S ARREST MAY REQUIRE IMMEDIATE ACTION PURSUANT TO 9 NYCRR 8004.2
CHECK THE FOLDER, SPECIFICALLY THE RAP SHEET, TO IDENTIFY IF THERE WAS A
CONVICTION OF MURDER, MANSLAUGHTER, RAPE 1, SODOMY 1, AGGRAVATED SEXUAL ABUSE
1 OR 2 OR ANY ATTEMPT TO COMMIT ANY OF THOSE CRIMES. IF THE ANSWER IS YES THEN
THE 5 HOUR CLOCK WILL BE TRIGGERED.
```

The Petitioner respectfully requests the right to make any and all further motions as may be necessary as a result of information and disclosure from the granting of the requests made herein and/or information received from any record within a reasonable time.

No other application for the relief sought herein has been made to this or to any other Court.

WHEREFORE, this Petitioner respectfully prays that an order for a **_Writ of Habeas Corpus_** be issued granting this motion pursuant to the aforesaid sections of the New York State Civil Practice Law and Rules, and taking into consideration the facts and argument annexed herein, or, in the alternative, an order be issued granting partial relief, or whatever relief the Court sees and deems fit and appropriate to insure the swift and proper administration of justice.

Yours, etc...

_____
PETITIONER

Sworn to before me this

27th day of October, 2020

_____
NOTARY PUBLIC / COMMISSIONER OF DEEDS

OLGA L. RIVERA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RI6360902
BRONX COUNTY
Commission Expires 12/03/2022

6



USPS TRACKING #

9590 9402 5073 9092 5542 70

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Mr. Calvin Reed #895-20-00017
1500 Hazen Street (NIC)
East Elmhurst, New York 11370

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

CLERk OF CouRT
205 EAST 161st STREET
BRONX, NEW York 10451

9590 9402 5071 9092 5542 70

2. Article Number (Transfer from service label)

7018 1130 0000 2770 9004

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    □ Agent
                         □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:         □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery
  (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted
  Delivery
□ Return Receipt for
  Merchandise
□ Signature Confirmation™
□ Signature Confirmation
  Restricted Delivery

Domestic Return Receipt

# How the trial penalty drives injustice

## BE OUR GUEST

### BY SUSAN J. WALSH
### AND NORMAN L. REIMER

New Yorkers following the Manhattan district attorney's race may have been introduced to a new term these last few months: the trial penalty.

At two candidate forums, each DA hopeful has confirmed he or she would seek to remove this critical flaw of the criminal justice system. The trouble is, few explained why, and even fewer have released detailed plans for how.

So what exactly is the trial penalty and why is it among the only unanimous positions in a contested prosecutor race? The trial penalty is the probability a person found guilty will receive a harsher sentence if they exercise their right to trial rather than accept a pretrial guilty plea. Sometimes the increase is modest, but too often it results in an exponential increase in punishment. While seemingly a small piece of the overall criminal legal system, the pressure to plead guilty caused by the trial penalty is a leading cause of mass incarceration, wrongful conviction, law enforcement overreach and distrust in the legal system – all issues a responsible DA candidate should aspire to fix.

Superficially, plea deals may seem like efficient justice. The accused agrees to a shorter sentence, and everyone involved is spared the burden of a costly and lengthy trial. But in reality, plea "bargaining" is a tool that prosecutors increasingly use to expand their control over the criminal justice process to avoid litigating cases in court.

Our justice system is founded on the principles that we are innocent until proven guilty, and whether alleged conduct meets the threshold of criminal guilt is supposed to be ultimately decided by a jury of our peers. Further, the Constitution provides other valuable rights such as the right to challenge unlawfully obtained evidence and to appeal adverse decisions.

But the hammer of the trial penalty is routinely wielded to extract waivers of these rights. These practices shield systemic law ability to redress them, including those which contribute to racial injustice. Under the current status quo, where more than 96% of criminal felony convictions in New York are convicted by plea, prosecutors have effectively commandeered the criminal process.

Our organizations, the National Association of Criminal Defense Lawyers and the New York State Association of Criminal Defense Lawyers, recently published the first-ever report, "The New York State Trial Penalty: The Constitutional Right to Trial Under Attack," detailing the pervasiveness of the trial penalty in New York. Through statistical analysis, interviews and case studies, we found the trial penalty to be incredibly corrupting to the state's legal system.

While every actor in the criminal process has some responsibility for the trial penalty – including legislators, judges and even defense lawyers – the criminal practitioners we surveyed ranked prosecutors as the primary driver.

We uncovered a pattern of coercion and unfair practice spanning decades in New York prosecution. Prosecutors routinely push "one-time" plea offers contingent on defendants foregoing certain rights, such as moving to challenge unlawfully acquired evidence from the case; bring felony charges or mandatory minimums instead of warranted misdemeanor ones to leverage the threat of higher jail time for a speedy guilty plea; and recommend excessive postmit sentences when plea deals are rejected. To make good on their commitment to end the trial penalty, the next Manhattan DA needs to have a strategy to confront each and every piece of the problem.

And while the Manhattan DA's office often sets standards of practice for prosecutors since it has one of the highest caseloads, it cannot undo the trial penalty alone.

Policymakers must prioritize legislation tackling this issue in the current Albany session so no more New Yorkers are denied their constitutional rights. Namely, our report recommends, among other steps, eliminating mandatory minimum sentencing statutes, enacting a judicial "second look" statute to ensure prior verdicts remain proportional and appropriate over time, and repealing section 220.10(5) of the New York Criminal Procedure Laws, which limits a defendant's ability to plead to lesser charges, and prohibiting prosecutors from conditioning plea deals on a defendant relinquishing certain constitutional rights.

We must put all available power behind eradicating the trial penalty in New York to restore the Sixth Amendment right to a fair trial. Such measures will also reinforce and encourage civic participation and oversight through jury service. The Manhattan DA's race is a proving ground for whether the next generation of prosecutors is up to that task. If they and legislators get on the same page, New York can seize the mantle of criminal justice reform and be a leader when the trial penalty is addressed on the national stage.

*Walsh is Partner at Vladeck, Raskin & Clark, P.C and Chair of the NYSACDL Trial Penalty Task Force. Reimer is the executive director of NACDL.*

# Cuomo's COVID corrections cruelty

**ERROL LOUIS**

Bronx state Supreme Court Justice Alison Tuitt affirmed this week what advocates have been saying for months: that nursing homes and adult residential facilities were not the only institutions where the policies of the Cuomo administration likely caused needless sickness and death from COVID-19.

People in New York's prisons and jails have been denied adequate spacing, protective equipment and other anti-COVID precautions, and in recent weeks were specifically — and senselessly — excluded from COVID-19 vaccines. That, Tuitt ruled, was illegal.

"To exclude these incarcerated persons from eligibility for the vaccine was unquestionably arbitrary and capricious, especially in light of the fact that [the Cuomo administration] approved vaccinations for all other congregate living facilities, including juvenile detention facilities," her decision says. "This was an unfair and unjust decision, by the administration], was not based in law or fact and was an abuse of discretion."

Jose Saldana, director of Release Aging People in Prison (RAPP), hailed the decision.

"We welcome the Supreme Court actually intervening in the health care of incarcerated people throughout the State of New York," he told me. "But the reality is that incarcerated people have been facing a health crisis,

sometimes for years and decades, during incarceration. And Gov. Cuomo has gotten away with ignoring the plight of the most vulnerable people in New York State" (Our full conversation is online at "You Decide," my podcast.)

Few groups have been more of a sitting target for COVID than prisoners in New York, many of whom have underlying sicknesses or are among the thousands of elderly people behind bars.

"You know, the Department of Corrections is not in the business of health care. They're not." Saldana said. "The substandard health care that they provide invites a pandemic of epic proportions in the state prison system."

As of this writing, a total of 35 state prisoners have died of the virus — a 67% increase from the 21 deaths recorded as at the end of December. More than 6,300 incarcerated people have tested positive for the virus, according to figures from the State Department of Corrections and Community Supervision, along with nearly 5,000 staff members.

On Rikers Island and other city jails — where the vast majority of detainees are awaiting their day in court — there have been more than 7,800 infections and at least 18 deaths among incarcerated people and jail staff. "As of Jan. 22, 21% of the entire city jail population was housed in a unit with a COVID-19 related designation: either likely exposed, symptomatic, or confirmed positive," Tuitt found.

The virus, naturally, has not remained behind bars. We've seen multiple outbreaks in upstate communities near prisons, where guards, vendors, medical staff and administrators regularly go in and out.

Instead of containing and combating the disease in controlled correctional settings, the state has allowed it to spin out of control, says Saldana, who spent 38 years in prison on state and federal charges.

"I've lived through health crises in New York state. The HIV/AIDS crisis. Then we had outbreaks of hepatitis C, tuberculosis. Their only response is punitive: lock people up in isolation — no property, nothing — and do absolutely nothing about it," he said. "The only thing they know is to treat every crisis with punishment."

New York is not alone in failing to keep COVID-19 under control in its jails and prisons. Last year saw more than 850 outbreaks at correctional facilities nationwide, according to Time magazine, and the Marshall

Project found that about 20% of all people incarcerated in federal and state facilities were infected, with more than 1,700 deaths.

While the Cuomo administration bears its share of the responsibility, all New Yorkers should ask ourselves some deeper questions.

Do we really want the government, in our name and with our dollars, to continue treating incarcerated people with hatred, contempt and endless punishment? Are we comfortable with the fact that New York's broken parole system systematically denies release to people who have served decades in prison, resulting in a growing number of sick, dying incarcerated senior citizens with soaring medical costs?

In other words: Does supposedly progressive New York believe in rehabilitation at all?

"In all the years that I've been in the prison system, never once were we offered a therapeutic program that would help us develop insight into the harm that our behavior caused — not a single program," said Saldana. "We [incarcerated people] created what we call a victim awareness program so that we can understand the harm — and equally important, that we understand that we have a moral obligation to heal. To repair that harm to the best of our ability."

Wise words. It should not take a pandemic, or a court order, for us to hear them.

*Louis is political anchor of NY1 News.*

**10** Tuesday, March 23, 2021



City inmates could not count on constitutional guarantee of attorney-client privacy because of phone contractor that wrongly recorded conversations and passed them on to prosecutors, defense lawyers say.

# Correx bigs ignored phone call troubles

**BY CHELSIA ROSE MARCIUS**
NEW YORK DAILY NEWS

Correction Department officials for months brushed off serious concerns about wrongfully recorded calls between inmates and legal advisers – even though public defenders sounded the alarm in March 2020, records and new testimony revealed Monday.

Agency officials only asked in December that Securus Technologies, a city contractor that manages the jail phone system, do two audits of mistakenly recorded calls after learning the Bronx district attorney's office had audio of privileged conversations.

Those audits revealed a shocking 1,500 confidential calls with Bronx and Brooklyn defendants had been recorded.

But the Brooklyn Defender Services had flagged the problem nine months earlier, according to a letter to Correction Department officials obtained by the Daily News.

"We believe the Department of Correction ... has improperly monitored and recorded legal calls between BDS clients and their counsel in violation of ... attorney-client privilege, and the United States Constitution," reads the March 2, 2020

## Blew off alerts on taped chats for mos. - defense lawyers

Heidi Grossman, the Correction Department's general counsel, said during a tense City Council Criminal Justice Committee hearing Monday that the agency would have acted sooner had it known prosecutors had recorded calls.

But according to a second email obtained by The News, the Legal Aid Society alerted the department on May 8 that prosecutors had calls in its possession.

"We ... received news that the DA turned over two calls with [a Legal Aid] attorney as part of discovery," Legal Aid Society CEO Archana Jayaram wrote to Correction Department officials. "We have sent the list of staff and still are learning that our calls are being recorded. Please let us know how we can resolve this?"

Grossman, at the hearing, said

questions, we would remedy that."

Councilman Keith Powers, who is chair of the committee, pushed back on those claims.

"Organizations or individuals and others came forward last year ... and noted that there was an issue here. And only at the point where it made [it into] the district attorney's hands did the agency decide to go back and do a larger [look at what happened,]" said Powers. "The answer from the agency here is that you didn't think was a systemic issue so you didn't follow up on it?" he added. "We [need] immediate answers into what happened."

The new details follow a Daily News bombshell report about how the mistakenly recorded calls wound up in the hands of prosecutors in Brooklyn and the Bronx. But other

Defender Services, the Bronx Defenders, the Legal Aid Society, Neighborhood Defender Service of Harlem, New York County Defender Services and Queens Defenders said in a joint statement.

"This problem is far more widespread than anyone could have expected, impacting hundreds and possibly thousands of people who believed their phone calls were not being recorded and needed to have an open conversation with their legal representative."

In a statement to The News, Securus said it "completed a review of each phone number provided to it by the NYC DOC since March 2020, which would cover organizations in each of the boroughs and those that serve the city more broadly."

Prosecutors in the Bronx, Brooklyn and Manhattan have been instructed not to listen to any wrongful recordings, and report any private conversations that have come in their possession, according to spokespeople from those district attorney offices.

In Staten Island, District Attorney Michael McMahon said his staff was in contact with the Correction Department about the issue

# DA nixes grope rap, cites seizure

Surveillance video proves a man accused of molesting an FDNY emergency medical technician at the scene of a Bronx fire was actually having a seizure, Bronx District Attorney Darcel Clark said Wednesday.

Clark said her office has now dismissed all charges against Aaron Cervantes-Mejia, 52.

"I will not tolerate assaults on first responders, who courageously serve our city, especially during this pandemic; and I will not prosecute anyone unless there is evidence to support charges," Clark said.

Police originally arrested Cervantes-Mejia on a felony assault charge for faking the medical episode, then groping the 32-year-old EMT when she rushed to his aid.

Video from a nearby store blew a hole in those allegations, according to Clark. "He [Cervantes-Mejia] was the subject of a false narrative that spread quickly through the media and social media," she said.

The man was flailing his arms around "in what appears to be the throes of a seizure," the DA's office said.                **John Annese**

**DAILY NEWS** NYDailyNews.com

# DA hopeful to expand decriminalization

**BY SHANT SHAHRIGIAN**
NEW YORK DAILY NEWS

Offenses from turnstile jumping to "consensual" sex work would not be prosecuted by state Assemblyman Dan Quart if he wins the race for Manhattan district attorney, he said Wednesday.

He released a "do-not-prosecute" list of 18 crimes that also included disorderly conduct and resisting arrest if there's no other charge, trespassing if the defendant is homeless and possession of alcohol by a minor.

Incumbent DA Cy Vance Jr. already refrains from prosecuting some of the offenses Quart

cited, such as marijuana possession, though the assemblyman would go further on that front, saying he wouldn't prosecute people for selling pot, either.

"This list is my pledge to the public that I will use incarceration as a last – not a first – resort, and it's one of the ways my office will make true on its promises to advance decarceration, reduce racial disparities and decriminalize poverty," said Quart, a Democrat currently repping the Upper East Side and part of Midtown in the Assembly.

He'd also shun prosecuting drug possession for personal use, possession of drug paraphernalia, possession of graffiti instruments,

gambling and the "vast majority" of welfare fraud and possession of stolen property cases.

The "do-not-prosecute" list comes as many of the candidates in the packed Manhattan DA race are seemingly trying to outdo one another in promising to reform one of the city's most high-profile institutions of criminal justice.

All nine have said they would end the practice of seeking longer sentences for defendants who don't take pretrial plea deals. Most say they oppose practices that lead to "mass incarceration."

Vance is yet to declare whether he's running for reelection in the June Democratic primary.



MANHATTAN DETENTION COMPLEX
125 WHITE STREET
NEW YORK, N.Y. 10013

# Brief reprieve for 2 city jails

**BY CHELSIA ROSE MARCIUS**
NEW YORK DAILY NEWS

A Queens judge has approved a temporary order from the city's correction officers' union to halt plans to close The Tombs and a Rikers Island jail.

Queens Supreme Court Justice Anna Culley signed off late Tuesday on a request from the Correction Officers' Benevolent Association to pause plans to shutter the Manhattan Detention Complex – better known as The Tombs – and Otis Bantum Correctional Center at Rikers Island.

The order is in effect until a court hearing on Thursday, when the city and union officials are expected to discuss the matter.

The closures, which are scheduled for later this month, come as the city's inmate population continues to balloon and as jail housing areas become increasingly overcrowded

from around 3,930 over the summer following coronavirus-driven inmate releases.

At the same time, some inmates have already been transferred out of the two jails on the chopping block. The Tombs (photo) and OBCC – which housed about 434 and 329 inmates during the first week of October – now house about 297 and 151, respectively.

"It's not the time now [to shut down these facilities] because of COVID," said Correction Officers' Benevolent Association President Benny Boscio Jr., noting the closures will make it harder for Correction Department staffers and inmates to socially distance.

The department – which has not seen an in-jail transmission of COVID-19 since May 19 – said the closures "will not result in more densely populated housing units," according to an Oct. 9 letter signed by Correction Department Com-

– the virus resurfaces in the jails.

"There's already overcrowding, and if somebody with COVID comes in now [the virus] is going to spread like wildfire," he said. "So you want to close two facilities and make it even worse, to condense us more? It makes no sense."

"We all know what happened the first time," he added, referring to the 1,446 Correction Department staffers who have tested positive for the disease. "We have the staff to manage the population, but they're putting money in front of our lives, our safety, and the safety of the inmates too."

Still, City Law Department spokeswoman Kimberly Joyce said the Correction Department has handled the closures in a way that will curb the spread.

"The [temporary restraining order] is only in effect until Thursday, when we will get our opportunity to present the actual facts to the

## Jumaane cool to Blaz mental health plan

**BY SHANT SHAHRIGIAN**
NEW YORK DAILY NEWS

Mayor de Blasio's new plan for handling 911 calls about mental health emergencies doesn't go far enough to change police practices, said Public Advocate Jumaane Williams and a group of nonprofit leaders.

"I'm ... glad to finally see action taken toward realizing this goal, but cognizant of the reality that if the administration were not so resistant to reform, we would have advanced much further by this point," Williams said Wednesday. "The mayor's announcement ... lacks the scope and specifics that we need. We need more details on where and how this program will operate, but some of the details we have now are concerning."

Last year, Williams called for the city to create a non-NYPD phone number people could call for mental health crises, among other measures aimed at taking such incidents out of the hands of law enforcement.

Under the de Blasio plan announced Tuesday, special teams consisting of mental health professionals and EMS staff will be sent to 911 calls for mental health episodes deemed safe. Cops will still respond to calls that are considered dangerous.

The program will begin as a pilot in two neighborhoods yet to be determined.

"The exclusion of 'peers,' or people with lived experience of mental health crises, from the proposed pilot is a mistake," said Cal Hedigan, CEO of nonprofit Community Access. "By continuing to rely on 911 and excluding peers, this new pilot leaves a lot of room for business as usual to continue, as subjective determinations of potential risk lead to an overdeployment of law enforcement."

**DAILY NEWS** NYDailyNews.com

# 5 yrs. after deal to fix Rikers, it is even worse: feds

BY STEPHEN REX BROWN
NEW YORK DAILY NEWS

Five years after signing an agreement with the feds to rein in a "culture of violence" at Rikers Island, use of force incidents have steadily increased, Manhattan federal prosecutors said Thursday, announcing new reforms.

The new measures include more supervision of captains, improved mental health evaluations of violent inmates and new protocols for emergency response probe teams, among other measures.

Acting Manhattan U.S. Attorney Audrey Strauss said the city was not living up to the terms of a landmark deal signed in 2015.

"The city and DOC have failed to fulfill core obligations under that agreement. While this office recognizes that changing a decades-long culture of violence is not a simple task, the city and DOC must do better. By agreeing to adopt the measures set forth in this remedial order, they have taken a step in the right direction," acting Strauss said.

As part of the agreement, a court-appointed monitor has documented the city's many failures at Rikers Island.

The Daily News has also documented many of the woes at Rikers over years, including staff concerns about sketchy violence data, downgrading of violent incidents in DOC data and alarm about alleged conditions at the jail even as its inmate population dwindles.

The average monthly use of force rate increased by more than 100% from 2016 to 2019. In a May report, the monitor found that DOC "continues to struggle to properly manage staff's use of force."

"A pattern of unprofessional conduct and hyper-confrontational behavior by staff, an over-reliance on alarms and the probe team, misuse of (pepper) spray, use of painful escort techniques, and improper use of head strikes have all plagued the agency's use of force" since signed the agreement, the monitor wrote.

The new reforms also seek to address a backlog of disciplinary hearings for correction officers. Under the new deal, DOC will be required to bring at least 50 cases before the city's administrative law court, OATH.

"The monitor's reports have made clear that the city has not lived up to its obligations under that agreement. The pervasive violence and dehumanization persists, and let's be clear: that burden has once again fallen most heavily on communities of color. These failures have a human cost, and they cannot continue," said Legal Aid Society attorney Mary Lynne Werlwas.

# Jail dorms becoming overcrowded, raising social-distancing concerns

**BY CHELSIA ROSE MARCIUS**
NEW YORK DAILY NEWS

City jail dormitories are becoming overcrowded, raising serious concerns about social distancing as the jail population creeps up toward prepandemic levels, new data show.

Housing areas in six of the Correction Department's 11 jails are more than half full with some areas approaching max capacity, according to city data from the Board of Correction, which also published a new report on jail housing ahead of its Tuesday public meeting.

The numbers come amid a 2% increase in coronavirus cases statewide, and as the city jail population continues to swell. The number of people in custody climbed to about 4,690 on Monday, up from around 3,930 people over the summer following a slew of coronavirus-driven inmate releases. The city jail population was about 5,560 in mid-March.

The city's Department of Correction first vowed to keep fewer people in dorms during the height of the pandemic, part of a crisis-response strategy to curb the spread of the disease.

The agency — which has not seen an in-jail transmission of COVID-19 since May 19 — is prepared to reopen the Eric M. Taylor Center and the two facilities slated for closure should the department see an uptick in positive cases. Yet such retroactive measures will do little to prevent people from getting sick if the city sees another coronavirus surge, said Kayla Simpson, staff attorney with the Prisoners' Rights Project at Legal Aid.

"This data ... shows that DOC is in flagrant disregard of the most basic public health guidance, which jeopardizes both our clients in the jails and the broader community.

"As experts everywhere are warning us to brace for a resurgence of the virus and the jail population climbs increasingly upward, the department continues to crowd people into poorly ventilated units [and] in close quarters. The city is failing people in the jails, and none of us should accept these practices or the city's efforts to hide them."

Correction Chief of Department Hazel Jennings testified at a state Senate hearing Sept. 22 that the agency will continue to make sure that we do not have the housing capacity at each housing area over 50% so that we can achieve the social distancing" during a discussion about measures taken to mitigate the spread. On that date, the average dorm densities for the Anna M. Kross Center and the Vernon C. Bain Center were over 70% capacity.

The Anna M. Kross Center at Rikers Island has seen some of the highest density numbers, with dormitories there at 85% capacity, the data show. Dorms at the Vernon C. Bain Center in the Bronx have reached 87% capacity, while the cell units in Otis Bantum Correctional Center at Rikers and the Manhattan Detention Complex in lower Manhattan — two facilities that are expected to close this month — were at 52% and 67% capacity, respectively.

Overall, 28% of inmates — or 1,265 — are currently in dormitory housing areas above 90% capacity according to data from the Board of Correction.

## DWI charge for off-duty NYPD cop in Sunday Bruckner Expressway crash

An off-duty NYPD cop was charged with driving drunk after crashing into another vehicle in the Bronx, police said Monday.

Officer Hector Martinez, 39, got into the crash with another vehicle on the Bruckner Expressway near the Hutchinson River Parkway about 2:30 a.m. Sunday, cops said.

A 28-year-old passenger in his vehicle and the 28-year-old driving the other vehicle were treated at Jacobi Hospital for pain, as was Martinez, who suffered neck pain, police said.

Police said Martinez smelled of alcohol and had bloodshot eyes. He was charged with driving while intoxicated and driving while ability impaired.

# Fox News guy known as sex addict, sez complaint

**BY STEPHEN REX BROWN**
NEW YORK DAILY NEWS

Former Fox News White House correspondent Ed Henry was widely known as a sex addict at the network before he raped a junior staffer, a new lawsuit charges.

Jennifer Eckhart filed an amended complaint Monday detailing Henry's raunchy reputation as he climbed the ladder at the network with a long history of vile men in powerful positions. Fox News fired Henry (inset), a prominent on-air personality, shortly before her allegations in July.

Eckhart's attorney, Michael Willemin, said Fox News was lying when it claimed no female employees had complained about Henry until she came forward.

"The amended complaint lays out how Fox News attempted to stick its head in the sand and refused to take appropriate action to protect female employees," including Eckhart and some of its other ... employees, Willemin said.

The suit, citing reporting by NPR and The Daily Beast, states Henry to undergo therapy for sex addiction in 2016 after it was revealed he had an affair with Las Vegas stripper.

"Everyone at Fox News knows that Henry is a sex addict. That's no secret," Fox Business anchor Liz Claman told Eckhart, according to the suit.

## DEATH NOTICES

The New York Daily News extends condolences to the families and loved ones of those who have passed.

To place a death notice
PlaceanAd.NYDailyNews.com

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| April 13, 2021 | Calvin Reed |
|---|---|
| Dated | Plaintiff's Signature |

| Calvin | | Reed |
|---|---|---|
| First Name | Middle Initial | Last Name |

1500 Hazen Street (NIC)
Prison Address

East Elmhurst, New York 11370
County, City                 State          Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: April 13, 2021

Page 17

Mr. Calvin Reed B &C#: 895-20-00017
1500 Hazen Street (NIC)
East Elmhurst, New York 11370



CLERK OF THE COURT

UNITED STATES DISTRICT COURT
Southern District of New York
The DANIEL PATRICK MOYNIHAN
THE UNITED STATES COURTHOUSE
U.S. COURT HOUSE - 500 PEARL STREET
NEW YORK, NEW YORK 10007

RECEIVED
APR 16 2021
CLERK'S OFFICE
S.D.N.Y.

USMP3
SDNY

Pro Se